716 A.2d 1231

**David L. SHICK, Appellant,**

**v.**

**David L. SHIREY t/d/b/a Donald L. Shirey Lumber, Appellee.**

Supreme Court of Pennsylvania.

Argued March 11, 1998.

Decided Aug. 20, 1998.

Ronald T. Elliott for David L. Shick.

Irwin W. Aronson, Camp Hill, for Amicus-AFL-CIO.

Fred Hait, Carlisle, for Amicus-PA Trial Lawyers Ass'n.

John Drayer for Donald Shirey.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

This appeal presents a question of first impression of whether Pennsylvania law recognizes a common law cause of action for wrongful discharge of an at-will employee for filing a workers' compensation claim. We hold that an at-will employee who alleges retaliatory discharge for the filing of a workers' compensation claim has stated a cause of action for which relief may be granted under the law of this Commonwealth.

On May 5, 1994, David L. Shick filed a civil action against his former employer, Donald L. Shirey, t/d/b/a Donald L. Shirey Lumber, alleging that Shirey had wrongfully discharged him from his employment in retaliation for his exercise of his rights under the Workers' Compensation Act. Shick's complaint asserted that he was hired as Shirey's employee in October 1991. On September 13, 1993, Shick sustained an injury to his left knee while pushing a cart. He underwent surgery for the knee injury on December 13, 1993. A notice of compensation payable, which described the injury as a partial tear of the left medial meniscus, was issued pursuant to the Workers' Compensation Act on November 30,

1993. The weekly compensation rate payable was $162.92, based on an average weekly wage of $181.02. Shick received benefits until March 1, 1994, when he was released to return to work by his physician. He notified Shirey on the day of his release that he was available for work.

Shick's complaint alleged that Shirey informed him that he no longer had a job due to his pursuit of his workers' compensation claim. It further alleged that Shirey's intent in discharging him from his employment was to retaliate for Shick's exercise of his rights under the Workers' Compensation Act, 77 P.S. § 1 et seq., and that the discharge was in violation of the public policy of the Commonwealth of Pennsylvania. Shick asserted that he had been unable to find gainful employment and requested damages to compensate him for lost wages, lost insurance benefits and emotional distress.

Preliminary objections in the nature of a demurrer were filed by Shirey. Shirey asserted that the complaint failed to state a cause of action because there was no allegation that Shick had a written contract of employment for a specific term or that Shick was a member of a collective bargaining unit, and Pennsylvania law does not recognize a claim for retaliatory discharge of an at-will employee who files for workers' compensation benefits. Shirey further asserted that the complaint did not state a cause of action for emotional distress in the absence of any allegation of intentional infliction of emotional distress or physical harm.

Shick subsequently filed an amended complaint which eliminated the request for damages due to emotional distress, but which otherwise was identical to his original complaint. Shirey renewed his preliminary objections to the wrongful discharge claim. After oral argument, the trial court entered an order sustaining the demurrer. Shick filed a motion for reconsideration which was denied.

The trial court's order was affirmed by a panel of the Superior Court on August 13, 1996. Shick filed an application for reargument, which was granted on October 18, 1996. The en banc Superior Court subsequently affirmed the trial court's

order, concluding that no precedent or statutory language existed to find that the termination of an employee who has filed for workers' compensation benefits states a cause of action for retaliatory discharge.[1] We granted Shick's petition for allowance of appeal and now reverse the Superior Court's order.

For purposes of reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, the averments of the complaint must be taken as true, except to the extent that they constitute conclusions of law. *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850 (1997).

> Since sustaining the demurrer results in a denial of the pleader's claim or dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted.... If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected.

*County of Allegheny v. Commonwealth of Pennsylvania,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985) (citations omitted).

Applying this standard of review, we must accept as true the allegations in Shick's complaint that he received workers' compensation benefits for a work-related injury until he was released to return to work by his physician, that he notified Shirey of his release and availability to work on the day of his release, and that Shirey informed Shick that he no longer had a job due to his pursuit of workers' compensation benefits.

Shick acknowledges that Pennsylvania law recognizes the doctrine of at-will employment so that, as a general rule, no cause of action exists based upon an employer's termination of an at-will employment relationship. He asserts that the alle-

---

**1.** Justice Saylor (then Judge Saylor) filed a dissenting opinion which was joined by Judge Ford Elliott and Judge Schiller. Judge Schiller also filed a separate dissenting statement.

gations set forth in his complaint were sufficient to state a cause of action for wrongful discharge because exceptions to that doctrine have been established when the discharge violates public policy. Shick argues that a clear mandate of public policy evinced by the Workers' Compensation Act is violated when an employee is discharged in a retaliatory manner for exercising his legal rights thereunder. Shick further contends that the Superior Court's refusal to recognize a cause of action for wrongful discharge under such circumstances places an employee who sustains a work-related injury in the untenable position of choosing between exercising his legal rights and seeking compensation for his injury under the Act, or foregoing his legal rights in an effort to maintain his livelihood.

Shirey contends that the Workers' Compensation Act assumes that "injured employes will be discharged to make room for able bodied individuals who can do the work." Shirey claims that the need for a fluid work force and the unreasonable hardship borne by an employer who cannot immediately replace a crucial employee who has been injured on the job are countervailing reasons for refusing to recognize a cause of action for retaliatory discharge when an employee is discharged in a retaliatory manner for exercising his legal rights thereunder. Shirey further contends that this Court is without the authority to recognize a common law cause of action for wrongful discharge because the scope and remedies afforded by the act are the province of the legislature.

Generally, an employer "may discharge an employee with or without cause, at pleasure, unless restrained by some contract." *Henry v. Pittsburg & Lake Erie Railroad Company*, 139 Pa. 289, 297, 21 A. 157 (1891). "Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." *Geary v. U.S. Steel Corporation*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974). The employer's privilege to dismiss an employee with or without cause is not absolute, however, and may be qualified by the dictates of public policy.

George Geary was an at-will employee who sold tubular products to the oil and gas industry for the United States Steel Corporation. Geary was dismissed after voicing his concerns over the inadequacy of the testing for one of the company's new products and the potential for serious danger to users of the product. In his complaint, Geary alleged that he continued to voice his misgivings to his superiors even after he was ordered to follow directions and that, as a result, the product was reevaluated and withdrawn from the market. Geary further asserted that he was wrongfully dismissed from his employment because of those events. The complaint was dismissed after the trial court sustained the employer's preliminary objections in the nature of a demurrer. The Superior Court affirmed.

Geary argued on appeal that his dismissal for opposing the marketing of a product which he believed to be defective violated public policy. We acknowledged that "the potential for abuse of an employer's power of dismissal is particularly serious where an employee must exercise independent, expert judgment in matters of public safety," but found that Geary did not possess any expert qualifications and his duties did not extend to making judgments in matters of public safety. Geary's conduct, while praiseworthy, demonstrated that he had failed to follow the company's standard operational procedures in bypassing his immediate superiors with his complaints. We found no basis for inferring that Geary's discharge was a retaliatory gesture designed to punish him for drawing attention to the product's defects, especially in view of the fact that the product was withdrawn from the market.

While we agreed that employees should be encouraged to express their views on the quality of an employer's products, we concluded that, under the circumstances, Geary's dismissal did not state a cause of action for wrongful discharge. Nevertheless, we foresaw exceptions to the general rule that there is no common law cause of action against an employer for dismissal of an at-will employee where the dismissal would threaten clear mandates of public policy.

It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of those areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public is violated thereby, an employee at will has no right of action against his employer for wrongful discharge.

*Geary,* 456 Pa. at 184, 319 A.2d at 180 (footnote omitted).[2]

Since *Geary* was decided, we have addressed arguments for exceptions to the general rule that there is no common law cause of action against an employer for termination of an at-will employee on rare occasion.[3]

2. We specifically identified two cases from other jurisdictions as instances in which the mandates of public policy were clear and compelling. Of particular relevance hereto is our citation to the Indiana Supreme Court's decision in *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), recognizing an exception to the general rule that an employee may be discharged without cause when an employee was discharged solely for exercising her statutorily conferred rights by filing a claim against her employer under Indiana's workmen's compensation statute. We also cited *Petermann v. International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (1959), which recognized a non-statutory cause of action on public policy grounds where an employee was dismissed for his refusal to commit perjury.

3. The Superior Court has recognized public policy exceptions to the general rule where an employee was discharged for filing an unemployment compensation claim, *Highhouse v. Avery Transportation,* 443 Pa.Super. 120, 660 A.2d 1374 (1995), see also *Raykovitz v. K Mart Corporation,* 445 Pa.Super. 378, 665 A.2d 833 (1995); where an employee was discharged for his refusal to submit to a polygraph test, *Kroen v. Bedway Security Agency, Inc.,* 430 Pa.Super. 83, 633 A.2d 628 (1993); where an employee was discharged for serving on a jury, *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119

*Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989), involved an action for wrongful discharge brought by Jeffrey and Mary Clay, alleging that their at-will employment had been terminated because Mary Clay had rejected sexual advances made by one of the employer's management level employees. Their action was dismissed by the common pleas court on the basis that the Pennsylvania Human Relations Commission had initial jurisdiction over the matter based on the allegations that the firings were connected with sexual harassment and discrimination in the workplace, and that the Clays' failure to pursue their administrative remedies barred them from seeking judicial recourse. The Superior Court reversed, holding that the existence of administrative remedies through the PHRC did not prevent the Clays from seeking judicial remedies based upon their common law rights.

We reversed, finding that the rationale of the principle of exhaustion of administrative remedies applied to actions brought under the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. "[A]llowing a discharged employee to commence an action in the courts without first exhausting administrative remedies would be logically inconsistent with the legislature's having created the PHRC to function as an efficient mechanism for handling such disputes." 522 Pa. at 90, 559 A.2d at 919. The enactment of the Pennsylvania Human Relations Act was intended to address the significant problem of unlawful discrimination, and was designed so that an administrative agency would be given the authority to investigate and dispose of complaints alleging unlawful discrimination. The pervasiveness of unlawful discrimination was such that only an administrative agency with broad remedial powers was believed to be effective in responding to the problem. We concluded that the statutory scheme would

(1978); and where an employee was discharged based upon performance of a statutory duty to report violations involving nuclear materials, *Field v. Philadelphia Electric Company*, 388 Pa.Super. 400, 565 A.2d 1170 (1989).

We have not yet addressed the public policy exceptions under the circumstances of those cases, and do not reach those issues today.

be frustrated if the PHRC was circumvented by filing claims initially in court. This disposition of the matter rendered it unnecessary to decide whether a common law cause of action for wrongful discharge based on allegations of sexual harassment exists, although we restated the *Geary* analysis.

In *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990), a physician sued his employer, Lankenau Hospital, alleging that the hospital was estopped from discharging him for removing refrigerators from the hospital. The physician claimed that he was authorized to remove the refrigerators by a storeroom manager, but was forced to sign a letter of resignation on the grounds that he had taken the items without proper authorization. The matter proceeded to trial on the theories of estoppel and detrimental reliance. The jury returned a verdict in favor of the physician and awarded damages for the loss of future earnings. The Superior Court affirmed.

We reversed, finding that the common pleas court had erred in submitting the case to the jury. We concluded that the doctrine of equitable estoppel is not an exception to the general rule that an employee may be discharged with or without cause, as "our law does not prohibit firing an employee for relying on an employer's promise." 524 Pa. at 95, 569 A.2d at 349.

In this case, Shick asserts that a clear mandate of public policy is violated, as contemplated under *Geary*, when an employee is discharged in a retaliatory manner for exercising his legal rights under the Workers' Compensation Act. Shirey responds that the Workers' Compensation Act does not set forth a clear mandate of public policy, and that the creation of such a public policy is a matter for the legislature, and not for the courts. The cases relied upon by Shirey, *Mamlin v. Genoe*, 340 Pa. 320, 17 A.2d 407 (1941), *Lurie v. Republican Alliance*, 412 Pa. 61, 192 A.2d 367 (1963), and *Hall v. Amica Mutual Insurance Company*, 538 Pa. 337, 648 A.2d 755 (1994), undermine his position. We reject the narrow view espoused by Shirey that what is cognizable as public

policy is only that which has been legislatively enacted, and that the absence of a statutory remedy for retaliatory discharge of an employee for filing a worker's compensation claim establishes that no public policy against such conduct exists.

*Mamlin* is instructive as to the respective roles that the legislature and the judiciary play in formulating pronouncements of public policy. Indeed, *Mamlin* is oft-cited for its discussion of public policy and, in particular, for the following statements:

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.

340 Pa. at 325, 17 A.2d at 409.

In *Mamlin*, the plaintiff had entered a judgment by confession against the defendant and issued an attachment execution summoning the City of Philadelphia Police Beneficiary Association as garnishee. The defendant's father held a membership certificate in the association under which a stipulated sum became payable to his designated beneficiaries upon his death. The plaintiff sought to execute upon the defendant's beneficial interest in the certificate after the father's death. The issue presented was whether the benefits to which the defendant was entitled were subject to attachment by her creditor.

The common pleas court determined that the benefits were subject to attachment because they were not exempted under an existing statutory provision relieving benefits paid by a fraternal benefit association from attachment, garnishment or other process. The Superior Court reversed, conceding that the benefits were not the subject of any statutory exemption, but finding that attachment of the benefits would be contrary to public policy.

We reversed, finding that if benefits payable by beneficial societies were to be exempt from attachment, such action could be accomplished only by an act of the legislature. We found that the legislature's enactment of varying statutes, including that governing attachment, which distinguished between fraternal benefit societies and other non-fraternal societies, was indicative of the legislature's intent to treat them differently. "Considering their dissimilarity in various respects, it would seem to have been because of a valid reason, and not mere oversight, that the legislature provided for an exemption in the one case and withheld it in the other." 340 Pa. at 326, 17 A.2d at 410.

Within this framework, we acknowledged the power of courts to pronounce public policy and contrasted that to the power of the legislature.

> Public policy, in the administration of the law by the courts, is essentially different from what may be public policy in the view of the legislature. With the legislature, it may be, and often is, nothing more than expediency. The public policy which dictates the enactment of a law is determined by the wisdom of the legislature. Public policy ... with [the legislature] ... may be, and often is, "nothing more than expediency"; but with [the courts], it must, and may only, be a reliance upon consistency with sound policy and good morals as to the consideration or thing to be done.

340 Pa. at 324–325, 17 A.2d at 409 (citations omitted).

In *Lurie v. Republican Alliance,* we again acknowledged that "the courts may in a proper case, in the absence of a legislative pronouncement, determine what is against public policy...." 412 Pa. at 65, 192 A.2d at 370. We refused to expand, however, on specific provisions of the Election Code regarding accounting procedures for political committees so as to permit taxpayers to challenge accountings in an equity court because the legislature had provided an adequate statutory remedy and vested jurisdiction in the court of quarter sessions.

*Hall v. Amica Mutual Insurance Company* involved the denial of an insured's claim for uninsured motorist benefits. The insured was injured while operating a motor vehicle in Barbados when he was forced off the road by another vehicle and struck a tree. The insurer denied his claim on the basis that the insurance policy's provision limited the territory of coverage, which did not include Barbados. The limitation was declared invalid by an arbitration panel. The Superior Court affirmed, concluding that the limitation was contrary to public policy and therefore unenforceable.

We determined that the uninsured motorist law did not contain an indication of public policy which was clear enough to void a plain, unambiguous territorial limitation clause. We found that the fact that a Pennsylvania motorist was not required to purchase uninsured motorist coverage even within the state undermined any argument that public policy required insurers to provide worldwide uninsured motorist coverage. "Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." 538 Pa. at 347, 648 A.2d at 760.

In each case, we recognized the independent authority of the courts to discern public policy in the absence of legislation. Where the legislature has spoken, however, we will not interpret statutory provisions to advance matters of supposed public interest. Shick argues that the legislature's failure to amend the Workers' Compensation Act to include provisions for filing a claim for retaliatory discharge renders this Court powerless to recognize such a cause of action. No sound analysis can be drawn from legislative silence. An equally compelling argument may be made that the legislature has not perceived that retaliatory discharge for filing of workers' compensation claims has become such a pervasive problem that it requires the experience of an administrative agency. The Workers' Compensation Act, while a definitive pronouncement of the law governing remedies for work-related injuries, is not legislation governing at-will employment.

The Workers' Compensation Act does provide a basis for our finding that termination of an at-will employee for filing a workers' compensation claim violates public policy. The Workers' Compensation Act is the exclusive means for obtaining compensation for injuries which has been substituted for common law tort actions between employees and employers. *Kachinski v. Workmen's Compensation Appeal Board,* 516 Pa. 240, 532 A.2d 374 (1987). The Act restricts the remedies available to an employee for injuries sustained in the course of employment and closes to the employee any recourse against the employer at common law for negligence. *Tsarnas v. Jones & Laughlin Steel Corporation,* 488 Pa. 513, 412 A.2d 1094 (1980).

The exclusivity of the statutory remedy is "the historical quid pro quo that employers received in return for being subjected to a statutory, no-fault system of compensation for worker injuries." *Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 36, 522 A.2d 548, 550 (1987). An employer is given immunity from lawsuits by employees for injuries defined under the Act, while an employee who sustains a work-related injury must demonstrate only that his injury resulted in a loss of earning power. "This distinct economic injury burden reflects the compromise which the Workers' Compensation Act fashioned between employees and employers: employees receiving immediate set benefits as opposed to the potentially greater benefits which could result from a successful tort action; and employers being protected from exorbitant unexpected costs which could result from employee lawsuits." *Kachinski,* 516 Pa. at 247, 532 A.2d at 377.

This historical balance would be disrupted if the employer could terminate an employee for filing a workers' compensation claim. As the Supreme Court of Indiana stated in its decision in *Frampton v. Central Indiana Gas Company,* 260 Ind. 249, 297 N.E.2d 425 (1973), which recognized a cause of action for retaliatory discharge for filing such claims:

> The [Indiana Workmen's Compensation] Act creates a duty in the employer to compensate employees for work-related injuries (through insurance) and a right in the employee to

receive such compensation. But in order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

260 Ind. at 251–252, 297 N.E.2d at 427. This analysis applies as well to Pennsylvania's Workers' Compensation Act.

Accordingly, we hold that a cause of action exists under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits. The complaint filed in this case was sufficient to state a cause of action for wrongful discharge. Accordingly, the order of the Superior Court is reversed and the case is remanded to common pleas court for further proceedings consistent with this opinion.

SAYLOR, J., did not participate in the consideration or decision of this case.

FLAHERTY, C.J., files a Concurring Opinion in which NEWMAN, J., joins.

FLAHERTY, Chief Justice, concurring.

I join the majority but write to express that our holding today does not create or indeed expand a new cause of action. It is consistent with *Geary v. U.S. Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). The at-will employment doctrine remains the law in Pennsylvania and exceptions are extremely limited.

NEWMAN, J., joins in this concurring opinion.