## Rothrock v. Rothrock Motor Sales Inc.

C.P. of Lehigh County, no. 1993-C-0211.

*Daniel Weinstock,* for plaintiffs.

*Wallace B. Eldridge III* and *John P. Meyers,* for defendant.

FORD, *J.,* July 19, 2001—On September 11, 2000, a jury found in favor of plaintiff, Theodore Rothrock (Ted, as he was called at trial), on his wrongful discharge from employment claim against defendant in the amount of $192,000. The same jury found that plaintiff, Douglas Rothrock (Doug), who is the son of Ted, was not terminated from his employment by the defendant, so a verdict was entered against Doug on his wrongful discharge claim. Post-trial motions were filed by the plaintiffs and by the defendant.

On June 28, 2001, after an earlier argument on these motions, we denied all of the motions. We provide the reasons for our June 28, 2001 order in this opinion.

The plaintiffs were at-will employees of the defendant corporation, a car dealership located in Allentown. They had no written employment contracts. Doug alleged that he suffered a work-related injury to his neck in May of 1992 and thereafter sought relief by filing a claim under the Workers' Compensation Act. (N.T., vol. III, pp. 70-71.) Plaintiffs contended that the principal of the defendant corporation, Bruce Rothrock Sr., who is the brother of Ted, threatened Ted that both plaintiffs would lose their jobs if Doug did not withdraw his workers' compensation claim. The claim was not withdrawn and was later honored through proceedings under the Workers' Compensation Act. (Court's restatement of earlier stipulation of counsel to this effect at N.T., vol. I, pp. 53-55.)

There is no serious challenge to the sufficiency of the evidence to support the jury's verdict that Ted was fired and that Doug was not fired. Rather, the primary issue raised by the defendant is whether the court properly concluded that the firing of an employee (in this case, Ted) for failure to pursuade a fellow employee (Doug) to withdraw his workers' compensation claim constitutes a violation of public policy which would fall under one of the very limited exceptions to Pennsylvania's general at-will employment rule. With its motion for judgment n.o.v., the defendant challenges a variety of our rulings and the charge which allowed such a cause of action to go to the jury.

Plaintiff, Ted Rothrock, testified about a meeting held in June of 1992, with his brother, Bruce, the principal of the corporation. Ted stated that Bruce made it clear to him that if Doug did not withdraw his claim, both Ted and Doug would be fired. (N.T., vol. II, pp. 32-33.)

A second meeting was held on July 16, 1992. During this meeting, a heated argument occurred between Bruce and his nephew, Doug. Mrs. Douglas Rothrock and Ted were at the meeting too. There was testimony that Doug refused to sign a form releasing or waiving his workers' compensation claim, despite Bruce's insistence that he do that. According to Ted, Bruce then fired Doug (a point rejected by the jury through a specific interrogatory). Ted described what took place next:

"Q. Now, after they left did you have any further conversation or did you personally, I should say, have any conversation with your brother, Bruce?

"A. The only thing I said in that meeting was he looked at me and he told me, 'Remember what I told you.'

"Q. What did you assume he meant by that?

"A. That if I didn't get this release signed, not one would be out of a job, two would be out of a job. . . .

"Q. And how did you respond?

"A. I responded to him by 'I will go down and I will clean out my desk and be off your premises.'

"Q. What did you do then after you were told that?

"A. I left.

"Q. Did you go down and clean out your stuff?

"A. Yes, I did." (N.T., Vol. II, pp. 37-41, with quotation at pp. 40-41.)

The verdict slip for Ted's claim had three interrogatories. The jury answered as follows:

"Question 1: Was plaintiff, Theodore C. Rothrock, terminated from his employment?

"Answer: Yes.

"Question 2: Was the termination of plaintiff, Theodore C. Rothrock, due to the filing or pursuit of a claim for workers' compensation by plaintiff Douglas Rothrock?

"Answer: Yes.

"Question 3: What amount of compensatory damages do you award Theodore C. Rothrock?

"Answer: $192,000." (N.T., vol. V, p. 148.)

Is it unlawful for an employer to fire an at-will employee who fails or refuses to persuade a fellow employee to withdraw a workers' compensation claim? A fair and logical application of the principles set forth by the Pennsylvania Supreme Court in *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1998) compels an affirmative answer to that question.

Pennsylvania has long been an at-will employment state. Absent an employment contract, the rule has historically been that an employer may terminate an employee for any reason. *Henry v. Pittsburg & Lake Erie Railroad Company,* 139 Pa. 289, 21 A. 157 (1891). There is an exception to the at-will employment rule whereby, under limited circumstances, it is illegal to terminate an employee if the firing constitutes a violation of a "clear

mandate of public policy." *Geary v. United States Steel Corporation,* 456 Pa. 171, 185, 319 A.2d 174, 180 (1974).

In *Shick v. Shirey, supra,* the Pennsylvania Supreme Court pronounced that firing an employee in retaliation for the filing of a workers' compensation claim was an actionable event and one of the narrow exceptions to the employment at-will doctrine.

The defendant argued that the holding in *Shick* was not applicable here. Because it was Doug who filed the claim, the argument continued, the *Shick* decision should not be extended to provide recourse to Ted who the jury found was fired for not convincing his son to withdraw the workers' compensation claim. However, such a narrow interpretation ignored the underlying considerations that the Supreme Court promoted with the *Shick* decision.

The Supreme Court of Indiana recognized a cause of action for retaliatory discharge for filing workers' compensation claims in *Frampton v. Central Indiana Gas Company,* 260 Ind. 249, 297 N.E.2d 425 (1973). The Pennsylvania Supreme Court cited the *Frampton* decision with approval and adopted its rationale in providing a cause of action for at-will employees who allege retaliatory discharge for the filing of a work injury claim. Our Supreme Court quoted from the Indiana decision as follows:

"The [Indiana Workmen's Compensation] Act creates a duty in the employer to compensate employees for work-related injuries (through insurance) and a right in the employee to receive such compensation. But in order for the goals of the Act to be realized and for public

policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation." *Shick v. Shirey, supra* at 603-604, 716 A.2d at 1237.

In *Shick,* the Supreme Court acknowledged the power of the courts to pronounce public policy in the absence of contrary statements by the legislature. We have cautiously made the logical and necessary extension of the same public policy at work in *Shick* so that a retaliatory discharge under the scenario of our case is also prohibited. To hold otherwise would provide license to employers to create an atmosphere in a given work force that stifles legitimate work-related claims. To hold otherwise would permit the employer to penalize an employee because another employee exercised a right under one of our statutes. To hold otherwise would create a loophole for employers to circumvent and undermine the important policy set forth in *Shick.*

For these reasons, plaintiff, Ted Rothrock, stated a cause of action for retaliatory discharge in violation of law. Our jury charge and rulings in accord with that determination were accurate. Accordingly, the motions for judgment n.o.v. and for a new trial were properly denied.

The defendant also makes a motion for remittitur. Defendant's position is that the compensatory damage award of $192,000 in favor of Ted was excessive and lacked an evidentiary foundation. The award was not excessive, and there is sufficient evidence at trial to support it. The plaintiffs accurately point out that the jury's award was well within the confines of the damage evidence.

Ted Rothrock testified as to his income and authenticated his available financial records (exhibit P-39) from 1990 to 1999. His income was:

| Year | Income |
|------|--------|
| 1990 | $47,027.37 |
| 1991 | $46,954.01 |
| 1993 | 0 |
| 1994 | $ 9,117.55 |
| 1995 | $11,912.61 |
| 1996 | $16,233.15 |
| 1997 | $22,328.70 |
| 1998 | $23,558.75 |
| 1999 | $10,321.99 |

(N.T., vol. II, pp. 52-56.)

Ted testified that, if he had not been fired, he intended to work with defendant until the age of 62 or 65. At the time of the trial, Ted was 64 years old. The date he was fired, as we have noted, was July 16, 1992, when Ted was 56. (N.T., vol. II, p. 57.)

Ted began looking for a new job after he was fired. He had only a ninth grade education. He watched newspaper advertisements, answered ads, spoke to insurance adjusters and made multiple applications. He obtained a

Pennsylvania appraiser's license to increase his marketability. Ted was not able to find a position working in another body shop. He did available work in his own garage and ended up driving a school bus, earning $62.50 per day. (N.T., vol. II, pp. 47-51.)

Under this evidence, there were a number of ways that the jury could have calculated damages in favor of Ted in view of its finding that he was terminated in retaliation for Doug's workers' compensation claim. The exact reasoning of the jury in making its award is, of course, unknown. Nevertheless, the award fits easily within a calculation of the difference between Ted's earnings before he was fired and his income after he was fired, all taken to a reasonable retirement age. Thus, the trial record shows a basis for the award.

In attacking the damage award, the defendant made other arguments. Defendant asserted that relief from the verdict was justified because Ted did not provide a tax return for 1992, and that Ted did not personally construct the financial summary (the face page of exhibit P-39) that was submitted to the jury. The financial summary was constructed by Ted's accountant. However, Ted authenticated the income summary as accurate. Moreover, there is considerable documentation contained within exhibit P-39 to support Ted's testimony about his income since 1990. Additionally, a party is not restricted to the presentation of tax forms to demonstrate income loss.

As to the missing 1992 tax return, the year during which Ted was fired, Ted claimed he made a search for the tax return but could not find it and believed that it was misplaced by the accountant. (N.T., vol. II, p. 56.)

The court gave the jury an adverse inference instruction regarding that missing tax return. (N.T., vol. V, pp. 99-100.) Although the issue appeared to be inconsequential, any prejudice that may have been suffered by the defendant was cured by the adverse inference instruction.

In its brief, defendant also attacks the damage award because W-2 forms were not submitted for certain years, and the W-2s of Ted's wife were not produced. These are arguments which affect the weight of Ted's testimony only and not the admissibility of it or the overall sufficiency of Ted's case. As we have pointed out, the jury had substantial information before it as to Ted's earnings before the termination and after it. The alleged missing bits of information were not basis for altering the damage award in any way but, rather, went into the mix for the jury's exercise of its fact-finding function.

The verdict in favor of Ted was not excessive. It did not shock our sense of justice. There was nothing to indicate that the verdict was influenced by partiality, prejudice, mistake or sympathy. The jury verdict will not be reduced.

In the defendant's motion for judgment n.o.v., it is alleged that the court erred in denying a defense motion in limine (N.T., vol. I, pp. 5-10) and in allowing the testimony of Gus R. Lesnevich, a forensic document examiner, who testified that signatures on certain documents were forged. The only challenge goes to the relevancy of Mr. Lesnevich's testimony on forgeries.

In order to find that a trial court's evidentiary rulings constituted reversible error, such rulings must not only

have been erroneous but must have been harmful to the complaining party. Actual prejudice to the complaining party must be shown. *Romeo v. Manuel,* 703 A.2d 530, 532 (Pa. Super. 1997) (citing *Bessemer Stores Inc. v. Reed Shaw Stenhouse Inc.,* 344 Pa. Super. 218, 224, 496 A.2d 762, 765 (1985)). Competent, relevant evidence having probative value is generally admissible and the trial judge is accorded "a large measure of discretion" regarding its admission or exclusion. *In re Commitment of Barbour,* 733 A.2d 1286, 1287 (Pa. Super. 1999) (citing *Engle v. West Penn Power Company,* 409 Pa. Super. 462, 598 A.2d 290 (1991), *alloc. denied,* 529 Pa. 669, 605 A.2d 334 (1992)).

The alleged forgeries were exhibits P-32 and P-33. They were misconduct warning letters supposedly issued by the defendant to Ted prior to his discharge. The documents showed signatures purportedly by Ted. Ted claimed at trial that he never received the documents and never signed them. (N.T., vol. II, pp. 43, 46.) Additionally, the plaintiff's expert, Gus Lesnevich, rendered the opinion that the signatures were forgeries. (N.T., vol. II, p. 174.)

The defendant used a two-pronged approach to counter the plaintiffs' evidence that Ted was terminated. First, defendant maintained that Ted resigned. Second, the defense claimed that his position was in serious jeopardy because of misconduct on the job, and he was about to be fired for that misconduct. (N.T., vol. I, p. 8.) If the paper trail of the alleged misconduct was fabricated through forgeries, that evidence was relevant and probative of significant issues in the case, namely, whether Ted was fired, and the motivation and credibility of the defendant and its principal officer, Bruce Rothrock.

The defendant had full opportunity to respond to these issues. It presented Edward Kelly, a forensic document examiner, who testified that he did not think the documents were forged. (N.T., vol. IV, p. 82.)

The plaintiffs filed a post-trial motion. It lists several issues in an attempt to get a new trial for Douglas Rothrock. However, only one issue was briefed. We address that below. The other issues which were not briefed and argued were waived. *Equipment Finance Inc. v. Toth,* 328 Pa. Super. 351, 476 A.2d 1366 (1984).

The remaining issue, as presented in plaintiffs' motion, was:

"The trial court improperly permitted RMS (defendant Rothrock Motor Sales) to defend this case on the basis that it believed Doug's (plaintiff Douglas Rothrock) claim for workers' compensation benefits was improper, but refused to permit plaintiffs to attack the bases and credibility of that belief."

This contention is vague. We do not know what court rulings were challenged. The defendant, in its brief in opposition to the plaintiffs' post-trial motion, accurately points out that the plaintiffs failed to cite the record or legal authority in support of their position of improper rulings by the court. Because of the vagueness of this allegation, we have dismissed it. However, a few comments about the issue are in order.

Aspects of Doug's workers' compensation claim were relevant to the wrongful discharge case. The challenge for the court was to walk the fine line of allowing those relevant issues to be placed before the jury and prevent-

ing a needless and improper retrying of issues from the workers' compensation case. The task was made easier by the stipulation of the parties that Doug's workers' compensation claim was honored and that he received compensation benefits. (N.T., vol. I, pp. 53-56.) The jury heard the stipulation several times during the trial.

As the reader knows, one of the defenses to the wrongful discharge claims was that the plaintiffs were not fired on July 16, 1992, but quit out of anger when Bruce Rothrock questioned the veracity of the workers' compensation claim. The defense was permitted to bring out those points even with the concession that the workers' compensation claim was honored. Considerable latitude was then given to plaintiffs' counsel in cross-examination of Bruce Rothrock in exploring and attacking his thoughts about the lack of legitimacy of the workers' compensation claim. The lawyers faced few objections as they explored these points. Nevertheless, the discussion about the claim's legitimacy was part and parcel of the episode that led to the severing of both plaintiffs' relationship with the defendant. The areas explored were relevant, and plaintiffs' counsel was not foreclosed in cross-examination. Thus, we fail to see error by the court in how we handled these matters. Nevertheless, we dismiss this argument of the plaintiffs because of the general and vague way that the issue was raised. There were no references to specific witnesses or rulings so meaningful evaluation or comment on the topic are not possible.

We have addressed all issues which have been briefed and argued. There are several other issues in the post-

trial motions of both attorneys which were not briefed and argued. Those are waived, and we have dismissed them.