NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3828
_____

WILLIAM SPRING,
Appellant

v.

SEALED AIR CORPORATION
doing business as
CRYOVAC, INC.
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-10-cv-04655)
District Judge: Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
May 21, 2012

Before:  RENDELL, FUENTES, and HARDIMAN, Circuit Judges

(Opinion Filed: May 29, 2012 )
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Plaintiff William Spring appeals from the District Court's grant of summary judgment in favor of the defendant on Spring's claims under the Family and Medical Leave Act (FMLA) and Pennsylvania state law.  Spring also appeals from the District

Court's denial of his motion to amend his complaint in order to add a claim under the Americans with Disabilities Act (ADA). For the following reasons, we will affirm.

**I.**

Spring worked as a bag sealer for defendant, Cryovac, Inc. He injured his back at work on November 26, 2008. Two days later, Spring visited his doctor, who diagnosed him with muscle strain, prescribed him some medication, and advised him not to return to work. Nevertheless, Spring reported to work on November 30th. That day, he told his supervisor that he had injured his back, but did not tell him that he injured it while at work.

On December 1st, Spring suffered an adverse reaction to his medication. He consulted his doctor, who told him not to work and gave him a new prescription. Spring called his employer on December 1st and 2nd, and informed Robert Blackton, Spring's shift supervisor, that he would not be at work. On December 3rd, Spring's doctor permitted him to return to work. Spring informed Robin Nagle, an employee in Cryovac's human resources department, that he would return to work on December 4th. Spring and Nagle discussed Spring's need to designate the missed days as leave under the FMLA. Spring also visited with Nagle on December 3rd, and had his doctor fax her a note stating that his injury was work-related. Nagle referred Spring to Robert Weaver, a Cryovac safety supervisor, to investigate whether Spring's injury was work-related.

Weaver asked Spring whether he reported the injury to anyone, and Spring answered that he did not.[1]

On December 3rd, George Homa, the production manager at Cryovac, suspended Spring for failing to immediately report a workplace injury, in violation of Cryovac's written policies, pending a further investigation into the violation. According to the policy, "all injuries, no matter how minor must be immediately reported to the Department Supervisor." (App. 21a.) Spring was aware of the written rules, and had been told orally about the policy.

After Spring was suspended, Blackton recommended to Homa that Spring be terminated in light of his performance history, which contained many instances of safety and disciplinary violations. The regional human resources manager, Timothy Reich, explained that Spring was being terminated in part because he "alleged an accident occurred on November 26, 2008 but he never reported anything about this 'accident' until December 3, 2008 . . . . Because of his long history of safety issues, as well as his numerous counsellings [sic] and progressive discipline history, the Reading management group is recommending termination." (App. 28a.) On January 2, 2009, Homa called Spring and told him that he was being terminated.

Spring had previously taken FMLA leave, from January 5-29, 2007, May 25-July 6, 2005 and in March 2004. No adverse employment actions were taken against him around those time periods.

---

[1] However, during his deposition, Spring testified that he notified Blackton and a different Cryovac employee on December 1st and December 2nd that his injury occurred at work on November 26th.

3

In September 2010, Spring sued Cryovac for violations of the FMLA and for retaliatory discharge under Pennsylvania law. On the defendant's motion, the District Court dismissed Spring's state-law claim. Then, Spring requested leave to file a second amended complaint in order to bring a claim for discrimination under the ADA. The District Court denied his motion for leave to file a second amended complaint. In September 2011, the District Court granted summary judgment for Cryovac on Spring's FMLA claims. Spring filed a timely notice of appeal.[2]

## II.

A.     State-Law Claims

Spring argues that the District Court erred in dismissing his state-law claim for retaliatory discharge. We review the District Court's grant of a Rule 12(b)(6) motion to dismiss *de novo*. *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 858 (3d Cir. 2012). Spring contends that under Pennsylvania law, which recognizes an exception to the at-will employment doctrine for a termination based on filing a workers' compensation claim, he also has a claim for retaliatory discharge. *See Shick v. Shirey*, 716 A.2d 1231, 1232 (Pa. 1998) (holding that an at-will employee who alleges retaliatory discharge for the filing of a workers' compensation claim has stated a cause of action under Pennsylvania law).

The Pennsylvania courts have yet to enumerate the elements of a retaliatory discharge claim based on seeking workers' compensation benefits. As such, we will

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

4

employ the familiar burden-shifting framework for a retaliatory discharge claim under Title VII. *See Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 277-78 (E.D. Pa. 2000). Thus, Spring must establish: (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between his protected activity and the employer's adverse action. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).

The District Court correctly concluded that Spring failed to show a causal connection between his initiating a claim for workers' compensation (when he reported his work-related injury to his employer) and his being terminated, as the record makes clear that he was suspended and ultimately terminated not for seeking workers' compensation, but for failing to immediately report a workplace injury and for a history of safety issues.

Nevertheless, Spring asserts that Cryovac's firing him for failing to immediately report a work-related injury constitutes retaliatory discharge because under Pennsylvania's workers' compensation laws, an employee has up to 120 days to report a work-related injury in order to initiate a claim for workers' compensation benefits. *See* 77 Pa. Cons. Stat. Ann. § 631. He requests that we certify two questions to the Pennsylvania Supreme Court, asking (1) whether an employer's policy requiring immediate notification to supervisors of all workplace injuries violates § 631; and (2) whether the defendant's actions here violated the exception to at-will employment for a termination based on filing a workers' compensation claim.

5

We do not read § 631 to forbid an employer to require that injuries be reported more quickly as part of the employer's safety polices. While the statute permits an employee to provide notice within 120 days for the purpose of obtaining workers' compensation, nothing in the statute indicates that the Pennsylvania legislature meant to prohibit employers from implementing more timely work-related injury reporting requirements for the purpose of safety. Spring was aware of the policy requiring injuries to be reported immediately, and he was fired for not complying with that policy. As such, we will decline Spring's request to certify questions to the Pennsylvania Supreme Court, for we will not "'ask a state court if it would care in effect to rewrite a statute.'" *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 152 n.12 (3d Cir. 2000) (quoting *Houston v. Hill*, 482 U.S. 451, 471 (1987)).

B.     FMLA Claims

Spring argues that the District Court erred in granting summary judgment for the defendant on his claims for interference and retaliation under the FMLA. We review the District Court's grant of summary judgment *de novo* and apply the same standard as the District Court. *Doe v. Luzerne County*, 660 F.3d 169, 174 (3d Cir. 2011).

1.     Interference

To assert an interference claim under the FMLA, the plaintiff need only show that "he was entitled to benefits under the FMLA and that he was denied them." *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). Terminating an employee for requesting FMLA benefits can constitute an interference claim, but an employer is not liable under the FMLA for terminating an employee during or at the end of his FMLA leave when the

6

reason for termination is not related to the employee's use of FMLA. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007) (explaining that a plaintiff will not prevail on an interference claim if the defendant can establish that it terminated the plaintiff "for a reason unrelated to his intention to exercise his rights under the FMLA").

Spring argues that Cryovac interfered with his ability to take FMLA leave because, he alleges, Nagle never gave him FMLA paperwork or designated his time off as FMLA leave. While whether Nagle provided Spring with FMLA paperwork is disputed, it is irrelevant because nothing in the record establishes that Spring was *denied* FMLA leave. If anything, the record suggests and the parties seemingly assume that Spring *did* take FMLA leave from December 1st to December 3rd.

Moreover, the record establishes that Spring was suspended and terminated after he completed his FMLA leave, for reasons unrelated to taking that leave. As in *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 148 (3d Cir. 2004), where "the record clearly indicate[d] that [the employee] would have been discharged absent any consideration of his . . . FMLA-protected leave," here too, the record indicates that Spring's termination had nothing to do with taking FMLA leave. Because a plaintiff will not prevail on an interference claim if the defendant can establish that it terminated the plaintiff "for a reason unrelated to his intention to exercise his rights under the FMLA," *Sarnowski*, 510 F.3d at 403, the District Court was correct to grant summary judgment for Cryovac on Spring's interference claim.

7

2.      Retaliation

To establish a retaliation claim under the FMLA, the plaintiff must show that: (1) he invoked his right to FMLA benefits; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the invocation of his rights. *Conoshenti*, 364 F.3d at 146.  Where, as here, the plaintiff offers no direct evidence of the retaliation, the *McDonnell Douglas* burden-shifting framework applies. *See Atchison v. Sears*, 666 F. Supp. 2d 477, 490 (E.D. Pa. 2009).  The District Court found that, under that burden-shifting framework, Spring failed to show that Cryovac's proffered nondiscriminatory reasons for suspending and terminating him—failing to immediately report a workplace injury and a history of safety and performance issues—were pretextual.

Spring argues that Cryovac's policy requiring immediate notification of workplace injuries is evidence of pretext because it permits the employer to terminate any employee, essentially in its discretion who fails to immediately report an injury.  Spring also argues that terminating him in accord with the policy is evidence of pretext because it violates 77 Pa. Con. Stat. Ann. § 631.  The District Court was correct to reject these arguments.  Given that the reporting requirements had long been in place and Spring was aware of them, it was not a post-hoc justification for terminating Spring.  Moreover, whether the reporting policy violates § 631 is irrelevant; a workplace policy requiring immediate reporting of injuries, and a state statute providing more time to report injuries for purposes of workers' compensation, do not undermine Cryovac's nondiscriminatory

8

reason for firing Spring, nor show that his taking FMLA leave was a motivating reason for his termination.

C. ADA Claim

Finally, Spring urges that the District Court erred in denying his request for leave to file a second amended complaint in order to add a claim for discrimination under the ADA. We review the District Court's denial of leave to file the second amended complaint for abuse of discretion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Spring recognizes that his ADA claim would normally be barred because he did not file a claim with the EEOC within 300 days of the alleged discrimination, but argues that he meets the requirements for equitable tolling, which may excuse his noncompliance with the EEOC filing requirement where (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge; and (2) this deception caused the plaintiff's noncompliance with the EEOC filing requirement. *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 383 (3d Cir. 2007). Spring contends that Cryovac actively misled him by failing to advise him that his accumulation of safety rule violations was an additional reason for his termination. To that end, Cryovac also hid from him an email exchange from 2008 in which supervisors at Cryovac discussed the effect of Spring's heart condition on his ability to perform certain tasks at work. Spring contends this email exchange is significant because shortly after this exchange, Spring was written up for disciplinary violations. However, Springs points to no evidence which supports these assertions, and there is no evidence showing that Cryovac actively misled

9

Spring. Therefore, the District Court correctly concluded that Spring is not entitled to equitable tolling, and did not abuse its discretion in denying Spring's request for leave to file a second amended complaint.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.