**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 17-2093

DEBRA STEELE
                            Appellant

v.

PELMOR LABORATORIES, INC.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-16-cv-03088)
District Judge: Honorable Legrome D. Davis

Submitted under Third Circuit L.A.R. 34.1(a)
on February 9, 2018

Before: CHAGARES, SCIRICA, and RENDELL, <u>Circuit Judges</u>

(Opinion filed: March 13, 2018)

O P I N I O N[*]

**RENDELL**, <u>Circuit Judge</u>:

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Debra Steele appeals the District Court's order granting summary judgment in favor of Pelmor Laboratories on Steele's Title VII and Pennsylvania Human Relations Act ("PHRA") retaliation claims and on her wrongful discharge claim.

We will affirm the District Court's order granting summary judgment in favor of Pelmor on all claims. The District Court concluded that Steele established a prima facie case of retaliation under Title VII and the PHRA, but that she had not produced sufficient evidence to allow a reasonable jury to conclude that Pelmor's proffered explanation for her termination—restructuring and poor job performance—was a pretext for retaliation. We will affirm. Because a plaintiff must also demonstrate pretext in order to succeed on a wrongful discharge claim, Steele's wrongful discharge claim fails as well.

## I. Background

Debra Steele worked as a production manager at Pelmor Laboratories. In November 2013, Pelmor promoted Michael Wuensche to Vice President of Operations, making him Steele's direct supervisor. Steele disagreed with several changes implemented by Wuensche. For example, she refused to prepare employee schedules four or five weeks in advance because she considered it a "waste of time." A.45.

In January and March of 2014, Wuensche sent Steele six emails regarding her failure to perform basic tasks such as scheduling employees and completing daily reports. In April 2014, Wuensche completed a performance review for Steele. He concluded that Steele's overall job performance was "below expected" and "[met] only a few requirements." A.234. He specifically noted Steele's lack of communication with coworkers and her failure to create employee schedules more than a few days in advance.

2

Wuensche sent Steele four additional performance-related emails in May, July, and August of 2014.

In September 2014, Steele filed a gender discrimination lawsuit against Pelmor. She alleged that Wuensche's promotion constituted gender discrimination under Title VII of the Civil Rights Act of 1964[1], the Equal Pay Act[2], and the PHRA[3]. *Steele v. Pelmor*, No. 2:14-cv-5340 (E.D. Pa. Sept. 18, 2014) ("*Steele I*"). Wuensche sent Steele two additional performance-related emails in October and November of 2014.

In March 2015, Wuensche drafted a memo that suggested eliminating the production manager position and reassigning those duties to other employees to better utilize the company's resources and improve the company's overall performance. He stressed that Steele was unable to effectively blend in with Pelmor's management practices and included an updated review of Steele's performance. It indicated that her performance had not improved since the 2014 evaluation. Pelmor's Human Resources Manager, Gerri Kovacic, turned Wuensche's handwritten draft into a typed memo, which Wuensche signed.

On April 29, 2015, the District Court granted summary judgment in favor of Pelmor in Steele's gender discrimination lawsuit.

On May 19, 2015, Wuensche emailed James Ross, Pelmor's president, suggesting the "elimination and realignment" of various job duties. A.249. His suggestions included eliminating the production manager position. Ross approved the elimination of the

---

[1] 42 U.S.C. § 2000e-3.
[2] 29 U.S.C. § 206(d).
[3] 43 Pa. Stat. Ann. § 955(d).

3

production manager position on May 26, 2015. He wrote: "I believe Pelmor can absorb those duties within the organization allowing us to gain more efficiencies, improve communication across departments, and reduce costs." A.249.

On the morning of May 29, 2015, Steele informed Human Resources that she wanted to file a worker's compensation claim because she had developed a hernia. A few hours later, Pelmor told Steele that her employment was terminated due to company restructuring.. After she was terminated, Steele filed a Notice of Appeal in her gender discrimination lawsuit. May 29 was the last day Steele could have timely filed a Notice of Appeal. *See* Fed. R. App. P. 4(a) (requiring an appellant to file notice of appeal within thirty days of the district court's entry of judgment).

In June 2016, Steele filed the instant lawsuit against Pelmor, alleging that her termination constituted retaliation under Title VII, the PHRA, and Pennsylvania common law. *Steele v. Pelmor Laboratories, Inc.*, No. 16-cv-3088, 2017 WL 5515919 (E.D.Pa. Apr. 18, 2017) ("*Steele II*"). Pelmor moved for summary judgment, arguing that Steele's employment had been terminated due to company restructuring and her poor job performance. *Steele II*, at *4. The District Court granted summary judgment in favor of Pelmor on all claims. *Id.* at *5. This timely appeal followed.

## II. Standard of Review

We exercise plenary review over a grant of summary judgment. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 451 (3d Cir. 2006). Summary judgment is appropriate if there is no dispute of material fact as to "an element essential to the [non-moving] party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

4

*Catrett*, 477 U.S. 317, 322 (1986). A dispute of fact is genuine if a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

### III. Analysis[4]

#### A. Title VII and PHRA Retaliation Claims

We will affirm the District Court's order granting summary judgment on Steele's Title VII and PHRA retaliation claims because Steele has not produced sufficient evidence to allow a reasonable jury to conclude that Pelmor's proffered explanation for her termination—restructuring and poor job performance—was pretext for retaliation.

We analyze retaliation claims arising under Title VII and the PHRA coextensively. *Atkinson*, 460 F.3d at 454 n.6. In the absence of direct evidence of retaliation, we evaluate both claims using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).

Under the *McDonnell Douglas* framework, a plaintiff who brings a Title VII or PHRA retaliation claim must first establish a prima facie case of retaliation. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to advance a legitimate, non-retaliatory reason for the adverse employment action. *Carvalho-Grevious v. Del.*

---

[4] The District Court had jurisdiction over this case under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

*State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). The burden then shifts back to the plaintiff to prove that the defendant's proffered reason is merely pretext for discrimination. *Id.*

To survive summary judgment on the issue of pretext, a plaintiff must produce evidence from which a reasonable jury could conclude that the employer's proffered explanation is false and that retaliation was the real reason for the adverse employment action. *Id.* at 257-58. "[A]n inference [of pretext] based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat [entry of] summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The District Court determined that Steele established a prima facie case of retaliation. We agree. However, Steele's retaliation claim ultimately fails because she has not put forth sufficient evidence to allow a reasonable jury to conclude that Pelmor's legitimate, non-discriminatory explanation for her termination—restructuring and poor job performance—was pretext for retaliation.

Steele claims that a reasonable jury could conclude that Pelmor's proffered explanation was pretext based on the "odd timing" of her termination and "numerous inconsistencies" in the record. Br. for Appellant at 5, 22. However, neither is sufficient to support a finding of pretext. Steele's timing argument—that Pelmor waited to fire Steele on May 29 to prevent her from appealing the dismissal of her discrimination suit—fails because Steele was still free to appeal her discrimination suit. In fact, she filed her appeal after she was terminated.

6

Steele's "inconsistencies" argument fares no better. "Pretext may be shown by exposing . . . weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions *in the employer's proffered legitimate reasons for its action.*" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 306 (3d Cir. 2007) (internal quotation marks omitted). (emphasis added). None of the inconsistencies identified by Steele relate to Pelmor's proffered explanation for her termination. They are minor discrepancies on immaterial issues, and they all are consistent with Pelmor's proffered reason for Steele's termination. Even considered together, these minor inconsistencies are not sufficient to allow a reasonable jury to conclude that Pelmor's explanation for Steele's termination was pretext for retaliation.

First, Steele points to Pelmor's failure to produce the original typed March 2015 memo, in which Wuensche first suggested eliminating the production manager position. According to Steele, this shows that the memo was fabricated to justify her termination. But Steele ignores the fact that Pelmor produced both the original hand-written memo and a duplicate of the typed memo. The original hand-written memo was identical to the typed version, and Kovacic testified as to the original typed memo's authenticity at her deposition. *See* Fed. R. Evid. 901(b)(1) (providing that a document can be authenticated by the testimony of a witness with knowledge). With regard to the duplicate of the typed memo, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Neither party raised a genuine question as to the

7

original memo's authenticity. Therefore, Pelmor's failure to produce the original typed March 2015 memo is immaterial.[5]

The second inconsistency Steele points to is a minor disparity between Pelmor's interrogatory answers and the deposition testimony of Rosemary Nugent, a Pelmor employee. According to Pelmor, Nugent took over one of Steele's duties—interacting with temporary staffing companies. According to Pelmor, Wuensche, Kovacic, and a third employee assisted Nugent as needed. However, Nugent testified that she had not taken over Steele's staffing duties. Instead, she testified, Wuensche and Kovacic were responsible for staffing after Steele's termination. *Id.* This minor discrepancy does not support a finding of pretext. In fact, terminating Steele and redistributing her duties to other Pelmor employees—regardless of who those particular employees were—is entirely consistent with Pelmor's claim that Steele's position was eliminated as part of an effort to reduce costs.

Third, Steele cites a minor inaccuracy in Wuensche's testimony as evidence of pretext. During his deposition, Wuensche said that he was unsure of the exact date he first learned that Steele's gender discrimination suit had been dismissed. When prodded for an answer, he testified that he learned of the dismissal more than thirty days before Pelmor terminated Steele's employment. This was inaccurate because Steele's gender

---

[5] Steele also argues that Ross's testimony that he did not remember seeing the March 2015 memo raises a genuine question as to the memo's authenticity. However, regardless of whether Ross saw the memo, the evidence shows that he had considered eliminating the production manager position to lower costs before Steele's employment was terminated. *See* A.247 (May 15, 2015 email from Wuensche to Ross with restructuring proposals); A.249 (May 26, 2015 email from Ross to Wuensche authorizing elimination of the production manager position).

discrimination suit was dismissed exactly thirty days before Pelmor terminated Steele's employment.

Steele argues that this inaccuracy "casts serious doubt on [Wuensche's] credibility as to other matters[.]" Br. for Appellant at 25. However, "[d]iscrepancies or inconsistent prior statements do not, as a matter of law, render a witness's testimony incredible." *United States v. Hernandez*, 544 F.3d 743, 747 (7th Cir. 2008). Furthermore, "the mistakes that witnesses make in all innocence must be distinguished from slips that . . . show that the witness is a liar or his memory completely unreliable." Ren v. Holder, 648 F.3d 1079, 1087 (9th Cir. 2011) (quoting *Kadia v. Gonzalez*, 501 F.3d 817, 822 (7th Cir. 2007)). Nothing in the record suggests that Wuensche intentionally distorted the truth. Rather, he acknowledged that he could not remember the exact date he learned of the dismissal. Then, when pressed by plaintiff's counsel, he made a good faith attempt to estimate the date, and his estimate was one day off. This is an innocent mistake, and it is not sufficient to render his testimony as a whole incredible.

Finally, Steele argues that Pelmor's failure to produce performance-related emails from every single month of 2014—after Pelmor alleged that it had sent Steele emails "once or twice a month" in 2014— is evidence of pretext. While the record does not contain performance-related emails from every month in 2014, it contains a total of twelve performance-related emails sent to Steele throughout the course of the year: three emails from January; three from March; one from May; two from July; one from August; one from October; and one from November. Twelve performance-related emails over the

course of a year is entirely consistent with Pelmor's claim that it fired Steele in part because of her poor job performance.

Even when considered together, the timing of Steele's termination and the four minor inconsistencies she points to are not sufficient to allow a reasonable jury to conclude that Pelmor's proffered explanation for Steele's termination was pretext for retaliation. In fact, Pelmor produced ample evidence to the contrary. The evidence indicates that the restructuring plan was a legitimate attempt to reduce overhead and improve efficiency: Steele's responsibilities were absorbed by existing employees, Pelmor did not hire a new production manager, and it implemented at least one of the other restructuring measures proposed by Wuensche. Steele's unsatisfactory job performance was also well-documented. Before she even filed her discrimination lawsuit, she had received an unsatisfactory performance review and several emails advising her of performance issues. There is simply no evidence to support a finding that Steele was terminated in retaliation for filing a discrimination lawsuit. We will therefore affirm the District Court's grant of summary judgment on Steele's Title VII and PHRA claims.

## B. Pennsylvania Wrongful Discharge Claim

We will affirm the District Court's order granting summary judgment on Steele's wrongful discharge claim for the same reason. Pennsylvania recognizes a cause of action for terminating an employee in retaliation for filing a worker's compensation claim. *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998). Although the Pennsylvania Supreme Court has not articulated the elements of a wrongful discharge claim, the Third Circuit analyzes

such claims using the same *McDonnell Douglas* framework used to analyze Title VII and PHRA claims. *Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009). Therefore, the absence of a showing of pretext dooms Steele's wrongful discharge claim as well.

## IV. Conclusion

For the foregoing reasons, we affirm the District Court's order granting summary judgment on all claims.