**Irini H. MIKHAIL, Appellant**

v.

**PENNSYLVANIA ORGANIZATION FOR WOMEN IN EARLY RECOVERY d/b/a Power, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 1, 2012.
Filed Feb. 27, 2013.

Peter H. Thomson, Sewickley, for appellant.

Marie I. R. Johnson, Pittsburgh, for appellee.

BEFORE: BENDER, J., DONOHUE, J. and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:

Irini H. Mikhail (Mikhail) appeals from the January 20, 2011 order which granted the preliminary objections of the Pennsylvania Organization for Women in Early Recovery (POWER) and dismissed her complaint. We affirm, albeit for different reasons than those of the trial court.

Mikhail's complaint alleged the following facts. Mikhail, a licensed professional counselor (LPC), began working for POWER in November 2007 as its only LPC and intensive outpatient therapist (IOP) for POWER's downtown Pittsburgh location. Complaint, 9/22/2010, at ¶¶ 3–4.

In May 2008, Mikhail met with a woman who required IOP therapy. The IOP program included a weekly group therapy session wherein group members discuss past sexual abuse. *Id.* at ¶ 7. Because the individual in question was a registered sex offender who had abused women in the past, Mikhail determined that it was inappropriate to include her in the existing IOP program which included women who had been victims of sexual abuse by other women. *Id.* at ¶ 8. Mikhail's supervisor, POWER's outpatient office manager, asked Mikhail to include this woman in the IOP program, but Mikhail refused. Although Mikhail's supervisor insisted that the woman be included, Mikhail continued to refuse to do so, citing concerns for the welfare of existing group members and her belief that including the new client would violate Mikhail's professional ethics. *Id.* at ¶¶ 12–13. POWER terminated Mikhail's employment for insubordination on May 13, 2008.

Mikhail initiated the instant action by writ of summons filed on May 11, 2010. In her complaint filed on September 22, 2010, Mikhail alleged that she was an at-will employee of POWER, but that her discharge violated Pennsylvania's public policy. Specifically, Mikhail alleged that her refusal to admit a registered sex offender into the existing IOP group "was consistent with numerous ethical standards and professional 'best practices' guidelines promulgated by the American Counseling Association (ACA), the National Board of Certified Counselors (NBCC), the Association of Specialists in Group Work (ASGW) as well as numerous other counseling and counseling related organizations." *Id.* at ¶ 16. Mikhail alleged that these ethical standards and best practices guidelines "are intended to serve the interests of the public . . . ." *Id.* at 20.

POWER filed preliminary objections challenging the legal sufficiency of Mik-

---

* Retired Senior Judge assigned to the Superior Court.

hail's complaint. POWER averred that Mikhail failed "to state a specific Pennsylvania public policy which was allegedly violated" by her discharge. Preliminary Objections, 10/25/2010, at ¶ 4. Further, POWER contended that the ethical and professional guidelines referenced by Mikhail in her complaint did not require her to disobey her supervisor's instructions. *Id.*

The trial court heard oral argument on November 30, 2010, and granted POWER's preliminary objections by order of January 4, 2011. Mikhail filed a motion for reconsideration, which the trial court granted by order of January 12, 2011. After review of Mikhail's brief, the trial court again sustained POWER's preliminary objections by order of January 20, 2011. Mikhail filed a timely notice of appeal, and both Mikhail and the trial court complied with Pa.R.A.P. 1925.

Mikhail states one question for our consideration on appeal.

Whether the [trial] court erred as a matter of law in determining that [ ] Mikhail's Complaint failed to state a cause of action based upon the public policy exception to the at-will employment doctrine where Mikhail, a[n LPC,] was terminated for refusing to admit a female sexual offender into a group [composed] of female sexual abuse victims based upon her statutorily[-] imposed duty to screen patients and not to delegate the screening process[,] all of which is designed to protect the public safety and welfare of the group patients.

Mikhail's Brief at 3.

Our standard of review of a trial court's order granting preliminary objections in the nature of a demurrer is *de novo* and our scope of review is plenary. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences. In ruling on a demurrer, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint.

Consequently, preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained.

*Krajewski v. Gusoff*, 53 A.3d 793, 802 (Pa.Super.2012) (internal quotations and citations omitted).

 We begin by examining the relevant law. "In Pennsylvania, absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." *Weaver v. Harpster*, 601 Pa. 488, 975 A.2d 555, 562 (2009). "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Id.* at 562.

An employee may bring a cause of action for a termination of that relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy. In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted. Rather, it is for the legislature to formulate the public

policies of the Commonwealth. The right of a court to declare what is or is not in accord with public policy exists only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it. Only in the clearest of cases may a court make public policy the basis of its decision. To determine the public policy of the Commonwealth, we examine the precedent within Pennsylvania, looking to our own Constitution, court decisions, and statutes promulgated by our legislature.

*Id.* at 563 (quotation and citations omitted).

Applying this standard, Pennsylvania courts have found actionable exceptions where the employee was terminated for filing a claim for worker's compensation benefits, *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1998); for filing a claim for unemployment benefits, *Highhouse v. Avery Transportation,* 443 Pa.Super. 120, 660 A.2d 1374 (1995); for failing to submit to a polygraph test where a statute prohibited employers from so requiring, *Kroen v. Bedway Security Agency, Inc.,* 430 Pa.Super. 83, 633 A.2d 628 (1993); for complying with a statutory duty to report violations to the Nuclear Regulatory Commission, *Field v. Philadelphia Electric Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989); and for serving jury duty, *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978).

Courts have found no public policy exception where the employee was terminated as a result of sexual discrimination by an employer not covered by the Pennsylvania Human Relations Act, *Weaver, supra;* for complaining about violations of the Occupational Safety and Health Act, *McLaughlin v. Gastrointestinal Special-*

*ists, Inc.,* 561 Pa. 307, 750 A.2d 283 (2000); for expressing concerns that the employer's product was unsafe, *Geary v. U.S. Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974); for disengaging an illegal surveillance system, *Hineline v. Stroudsburg Electric Supply Co.,* 384 Pa.Super. 537, 559 A.2d 566 (1989), appeal denied 524 Pa. 628, 574 A.2d 70 (1989); or for complaining about the waste of taxpayer money, *Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 489 A.2d 828 (1985).

■ In sum, "an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when [specifically] prohibited from doing so by statute." *Donahue v. Federal Exp. Corp.,* 753 A.2d 238, 244 (Pa.Super.2000) (quoting *Spierling v. First Am. Home Health Servs., Inc.,* 737 A.2d 1250, 1252 (Pa.Super.1999)). Outside of those categories of our legislature's expression of public policy, a court may find a public policy exception that will sustain a wrongful termination action only if the public policy "is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Weaver,* 975 A.2d at 563.

Mindful of the above, we examine the public policy alleged to have been violated by Mikhail's termination. To evidence that policy, Mikhail points to two provisions of the ACA Code of Ethics and a provision of the Pennsylvania Code.

The ACA Code of Ethics provides guidelines for counseling in a group setting. Counselors are to "take reasonable measures to protect clients from physical, emotional, or psychological trauma." ACA Code of Ethics § A.8.a. (2005). Counselors must screen prospective group therapy patients, and "[t]o the extent possible," select members for the group "whose

needs and goals are compatible with the goals of the group, who will not impede the group process, and whose well-being will not be jeopardized by the group experience." *Id.* at § A.8.b. Mikhail correctly notes that the Pennsylvania Code mandates that LPCs adhere to the ACA Code of Ethics. *See* 49 Pa.Code § 49.71(a).

Further, the Pennsylvania Code also provides that an LPC may not delegate her professional responsibilities "to another person when the [LPC] delegating the responsibilities knows or has reason to know that the other person is not qualified by training, experience or licensure to perform those responsibilities." 49 Pa.Code § 49.72(c).

Mikhail argues that she was complying with her duty to screen patients to protect the existing members of the group when she refused to admit a registered sex offender into the IOP program composed of victims of sexual abuse. Mikhail's Brief at 11. Mikhail maintains that if she had obeyed her supervisor, who was not an LPC, she would have violated her obligation not to delegate her professional responsibilities. *Id.* Therefore, Mikhail contends that her termination for refusing to disobey a statutorily-imposed duty and her professional code of ethics violates the public policy of Pennsylvania. *Id.*

For purposes of deciding POWER's preliminary objections, the trial court accepted Mikhail's argument that the ACA Code of Ethics, incorporated into the Pennsylvania Code, stated a viable public policy exception. Trial Court Opinion, 3/21/2011, at 2. However, the trial court proceeded to make its ruling based upon the unreported federal court case of *Thomas v. Pathmark Stores, Inc.*, No. 08–03411, 2008 WL 5382861 (E.D.Pa. December 24, 2008).[1]

In *Thomas*, the employee alleged that he was terminated for reporting that his supervisor sliced chicken on a slicer without first cleaning and sanitizing the machine, and that the termination contravened public policy as expressed in the Pennsylvania Food Code. *Id.* at *1. The court examined Pennsylvania precedent on wrongful discharge claims, including *Shick, supra.* In discussing *Shick*, the court noted

> *Shick* rejected the notion that what may be considered public policy is only that which is enacted by the legislature and held that the absence of a statutory remedy specifically addressing retaliatory discharge for filing a workers compensation claim does not indicate that no public policy against such conduct exists. The court held that the fact that the Workers Compensation Act provides the exclusive remedy for injuries sustained during the course of employment and strikes a delicate balance between the interests of employers and employees indicated the importance of that Act; allowing an employer to terminate an employee for pursuing his claim under the Act would undermine the legislature's goals in enacting the Act.

*Id.* at *7 (citations omitted). The court then contrasted Thomas' claim with cases in which Pennsylvania courts had found viable public policy exceptions.

> Unlike the claim under the Workers Compensation Act in *Shick*, the Food Act does not provide a specific right to employees or strike a delicate balance between the interests of employers and employees. The Food Act provides standards for entities in the food business to follow and does not govern the relationship with employees at all. Furthermore, employees do not have a duty

---

1. The trial court appears to have found the *Thomas* case in conducting its own research, as neither party cited the case in its pleadings or briefs.

under the Act to report violations, and thus reporting violations of the Act is not an exercise of a legal right or responsibility, as is filing for unemployment benefits, refusing to submit to a polygraph test, or serving on a jury. Even when an employer's actions are potentially harmful to the public, as in *Geary,* or illegal, as in *Hineline,* Pennsylvania courts have failed to find a violation of public policy. The Court cannot find that private reporting of Food Act violations is "so deeply integrated in the customs and beliefs of the people," or sufficiently "strikes at the heart of a citizen's social rights, duties, and responsibilities," to fall within the narrow public policy exception.

*Id.* at *9 (citations omitted).

"Utilizing the reasoning and rationale" of *Thomas,* the trial court in the instant case concluded that "[a c]ourt may properly apply the public policy exception to the at-will employment doctrine only if [it] find[s] that [the] termination violates a public policy expressed by a Pennsylvania statute that 'provide[s] a specific right to employees or strike[s] a delicate balance between the interests of employers and employees.' " Trial Court Opinion, 3/21/2011, at 2 (quoting *Thomas, supra* at *9). Although the trial court acknowledged that *Thomas* was not precedential and conceded that the principle stated in *Thomas* was not universally representative of Pennsylvania appellate law, the trial court nonetheless concluded that Mikhail failed to state a cause of action for wrongful termination because she did not allege that she was fired in violation of a public policy that related to the employer-employee relationship. *Id.* at 6.

The trial court erred in both its interpretation and application of *Thomas.* First, the *Thomas* court's reference to the Food Code's failure to "provide a specific right to employees or strike a delicate balance between the interests of employers and employees" was merely a means of distinguishing *Thomas* from *Shick.* Rather than ending the analysis upon determining that the Food Act did not relate to the employer-employee relationship, the *Thomas* court went on to conclude that the policy at issue was dissimilar from other recognized public policy exceptions, such as refusing to submit to a polygraph test and serving jury duty, and otherwise failed to implicate a sufficiently weighty and established public policy. Therefore, the trial court's determination that *Thomas* stands for the proposition that "the purportedly violated public policy must relate to the employer/employee relationship[,]" Trial Court Opinion, 3/21/2011, at 3, was error.

Further, based upon our own examination of appellate authority, we reject the trial court's conclusion that whether a public policy relates to the employer-employee relationship has been consistently applied by Pennsylvania courts in ruling upon wrongful discharge claims.

For example, this Court has repeatedly acknowledged that an employer cannot require an employee to commit a crime. *See, e.g., Hennessy v. Santiago,* 708 A.2d 1269, 1273 (Pa.Super.1998). We have also held that an employee may not be terminated for fulfilling his obligation of jury service. *Reuther, supra.* Neither of these public policies has anything to do with the employer-employee relationship. Rather, to allow an employer to discharge an employee for refusing to commit a crime or for fulfilling a jury duty obligation threatens a "recognized facet of public policy," and represents intrusion into "areas of an employee's life in which his employer has no legitimate interest." *Geary,* 319 A.2d at 180.

■ The extent to which the policy at issue in any given case relates to the employment relationship may be a relevant consideration in determining whether the employee has stated a viable cause of action for wrongful termination. *See, e.g., Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830, 844 (1986) (listing factors relevant to the review of the dismissal of a wrongful discharge claim). However, the question before any court in deciding such a case is the broader question of whether the employee alleged that the termination violated **any** clear mandate of a public policy of this Commonwealth.

Narrowing the wrongful discharge cause of action to encompass only those public policies that relate to the employer-employee relationship is unwarranted by precedent; would eviscerate public policy exceptions previously validated by this Court; and would thwart the purpose of the exception to the general at-will employment rule: the protection of clearly-established Pennsylvania public policy.

■ Therefore, the trial court erred in its belief that a public policy exception to the at-will employment doctrine must be a policy that relates to the employer-employee relationship. However, we nonetheless conclude that Mikhail's complaint was properly dismissed.[2]

■ As discussed above, Mikhail points to two purported statements of public policy that she claims were violated by her discharge: that LPCs must protect group members from harm, and that LPCs may not delegate professional responsibilities. Appellant, however, makes no argument that these administrative rules which regulate certain professions represent a clear mandate of public policy. Even assuming

*arguendo* that these are expressions of Pennsylvania's public policy, her claim fails.

The provision of the Pennsylvania Code that prohibits an LPC from delegating professional responsibilities states that an LPC may not delegate duties to another person when the LPC "knows or has reason to know that the other person is not qualified by training, experience or licensure to perform those responsibilities." 49 Pa.Code. § 49.72(c). While Mikhail alleges that her supervisor at POWER was not licensed, she makes no claim that she knew or had reason to know that the supervisor was not qualified by training or experience to perform client screening. Accordingly, Mikhail's complaint fails to allege a cause of action for wrongful discharge based upon violation of a public policy against delegating LPC duties.

■ Nor has Mikhail shown that her termination violated a public policy established through her professional ethical responsibilities. This Court rejected a similar argument that ethical guidelines form a basis for a public policy exception in *McGonagle v. Union Fidelity Corp.*, 383 Pa.Super. 223, 556 A.2d 878 (1989), *appeal denied*, 525 Pa. 584, 575 A.2d 115 (1990). In that case, an insurance company terminated McGonagle as general counsel after McGonagle refused to approve mailings that he believed violated insurance laws of various states. We noted the dilemma that professionals may face in such situations.

An employee who is also a professional has a dual obligation: to abide by federal and state laws, in addition to staying within the bounds of his/her professional code of ethics. Such responsibility may necessitate that the profes-

---

**2.** "[W]e are not bound by the rationale of the trial court and may affirm on any basis."

*Richmond v. McHale*, 35 A.3d 779, 786 n. 2 (Pa.Super.2012).

sional forego the performance of an act required by his/her employer. However, **when the act to be performed turns upon a question of judgment, as to its legality or ethical nature, the employer should not be precluded from conducting its business where the professional's opinion is open to question.** *McGonagle*, 556 A.2d at 885 (citations omitted; emphasis added). Therefore, this Court concluded that the termination of McGonagle's at-will employment was not contrary to public policy.

Here, none of the ethical guidelines cited by Mikhail expressly requires counselors to refrain from placing prior sex offenders in group therapy sessions that include victims of sexual abuse. Rather, they generally require her to exercise her judgment to determine which patients are appropriate for group therapy and "to the extent possible" select compatible group members. ACA Code of Ethics § A.8.b. As in *McGonagle*, we cannot conclude that POWER's decision to terminate Mikhail based upon differences in judgment violates the public policy of this Commonwealth.

Therefore, we hold that the trial court made the right decision for the wrong reason. An employee claiming that termination of his or her at-will employment is contrary to public policy need not demonstrate that the violated policy related to the employer-employee relationship. However, POWER's preliminary objections were properly sustained because Mikhail failed to show that her termination violated a policy that is "so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Weaver*, 975 A.2d at 563.

Order affirmed.

Judge BENDER files a dissenting opinion.

## DISSENTING OPINION BY BENDER, J.:

For the same reasons set forth in the Majority Opinion, I agree that the trial court erred in holding that a public policy exception to the at-will employment doctrine must necessarily be based upon a policy that regulates the employer-employee relationship. However, I disagree that it is certain that Appellant's termination was not based upon violation of a clear mandate of public policy. Given our standard of review, particularly the directive that "where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it[,]" I would reverse the trial court's order granting POWER's preliminary objections. *Krajewski v. Gusoff*, 53 A.3d 793, 802 (Pa.Super.2012). Therefore, I respectfully dissent.

First, I find the Majority's reasoning flawed when it concludes that Appellant's complaint fails because she did not specifically allege that "she knew or had reason to know that the supervisor was not qualified by training or experience to perform client screening." Majority Opinion, at 320. The Pennsylvania Code prohibits the delegation of professional responsibilities to another person when the LPC "knows or has reason to know that the other person is not qualified by training, experience[,] or licensure to perform those responsibilities." 49 Pa.Code. § 49.72(c). It may be the case that a non-LPC, through training, experience, or both, is capable and authorized to perform the screening function at issue here. This seems to be the implicit assumption of the Majority. However, if licensure *is required* to perform the specific function at issue in this case—the screening of potential clients for inclusion in a particular group therapy ses-

sion—then Appellant's allegation that her supervisor was not licensed is sufficient for demurrer purposes. Accordingly, I would conclude that trial court's dismissal at the preliminary objection stage on this basis was premature. "The question presented by the demurrer is whether, on the facts averred, **the law says with certainty that no recovery is possible.**" *Krajewski,* 53 A.3d at 802 (emphasis added).

I also take issue with the Majority's reliance on *McGonagle v. Union Fidelity Corp.,* 383 Pa.Super. 223, 556 A.2d 878 (Pa.Super.1989), to dismiss Appellant's other assertion of a public policy exception to the at-will employment doctrine. Appellant also alleged a public policy exception premised upon more generalized ethical responsibility to protect group therapy members from harm.[1] The Majority rejects this claim, holding that:

> Here, none of the ethical guidelines cited by Mikhail expressly requires counselors to refrain from placing prior sex offenders in group therapy sessions that include victims of sexual abuse. Rather, they generally require her to exercise judgment to determine which patients are appropriate for group therapy and "to the extent possible" select compatible group members.
>
> As in *McGonagle,* we cannot conclude that POWER's decision to terminate Mikhail based upon differences in judgment violates the public policy of this Commonwealth.

Majority Opinion, at 321 (quoting ACA Code of Ethics § A.8.b.).

In *McGonagle,* the discharged plaintiff claimed that his employer, an insurance company, fired him when he refused to authorize the issuance of insurance policies that he believed violated various state laws and regulations. As recited by the Majority in this case, this Court first acknowledged the professional's dilemma in an at-will employment setting.[2] But that was not the end of the *McGonagle* court's inquiry.

The defendants in *McGonagle* argued that "the 'policy filing problems' were minor in nature and easily reconciled without the loss of revenue or the contravention of any state's insurance requirements," a matter this Court found to be, if true, "more akin to a difference of opinion and not a request to have the plaintiff perform an 'illegal' or unethical act in furtherance of corporate profits." *McGonagle,* 556 A.2d at 885. After reviewing the statutes at issue and a fully developed factual record, the *McGonagle* court determined that the statutory expression of policy underlying McGonagle's public policy exception claim were no more than "a 'general' expression of this Commonwealth's attempt to monitor a particular industry[,]" and that they were "purely 'voluntary' in nature." *Id.*

In Pennsylvania, "a case-by-case analysis has been adopted in reviewing a wrong-

---

1. Pennsylvania law states that LPC "shall adhere to the ACA Code of Ethics, except when the ACA Code of Ethics conflict with this chapter." 49 Pa.Code § 49.71.

2. The *McGonagle* court stated:
 An employee who is also a professional has a dual obligation: to abide by federal and state laws, in addition to staying within the bounds of his/her professional code of ethics. Such responsibility may necessitate that the professional forego the performance of an act required by his/her employer. However, when the act to be performed turns upon a question of judgment, as to its legality or ethical nature, the employer should not be precluded from conducting its business where the professional's opinion is open to question.
 *McGonagle,* 556 A.2d at 885 (internal citation omitted).

ful discharge cause of action." *Id.* at 884. While the instant case does share some similarities with *McGonagle,* there are critical differences that I believe can only be reconciled through further factual development of this case. In *McGonagle,* we had the benefit of a fully developed factual record when we reversed the order denying the defendants' motion for judgment n.o.v. We relied on that developed record when we concluded that the actions the plaintiff refused to take were not specifically proscribed by statute. Furthermore, compliance with the statutory scheme relied on by the plaintiff in *McGonagle* was found to be voluntary in nature.

Here, we are faced with an undeveloped factual record. As a result, we simply do not know whether the inclusion of a sex offender in a group therapy session for victims of sexual abuse is a choice left to the judgment of each individual LPC, or if such action would be universally condemned by practitioners as violative of the statutory requirement that Pennsylvania certified LPCs adhere to the ACA Code of Ethics. Accordingly, I would also conclude that dismissal on this basis at the preliminary objections stage was premature.

I believe the dismissal of Appellant's claims on preliminary objections was premature under either theory of relief and, therefore, I would have instead reversed that order of the trial court and allowed the facts of this case to crystallize. I simply cannot say with a sufficient degree of "certainty" that, at this early stage, "no recovery is possible." *Krajewski,* 53 A.3d at 802.

Because the Majority has undertaken a different course, I respectfully dissent.