J-A04042-15

2015 PA Super 86

| TIMOTHY J. STEWART, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| FEDEX EXPRESS AND FEDERAL | : | |
| EXPRESS CORPORATION, | : | |
| | : | |
| Appellees | : | No. 1104 WDA 2014 |

Appeal from the Order Entered June 24, 2014
in the Court of Common Pleas of Beaver County
Civil Division, at No(s): 11222-2013

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:                          **FILED APRIL 17, 2015**

Timothy J. Stewart ("Stewart" or "Mr. Stewart") appeals from the June 24, 2014 order which sustained the preliminary objections filed by FedEx Express and Federal Express Corporation ("FedEx"), and dismissed Stewart's complaint.  We affirm.

The trial court summarized the facts of this case as follows.

> [Mr. Stewart] was employed at FedEx as a senior security specialist for almost six years, from April 9, 2007 through April 17, 2013.  On April 5, 2013, Mr. Stewart and Kelly Kraemer, another senior security specialist, traveled together for work from the FedEx Pittsburgh Ground headquarters to the FedEx office in Cranberry.  Mr. Stewart used his [] personal vehicle for this trip.  During their trip from one FedEx location to another, Mr. Kraemer asked Mr. Stewart if he could put his car keys in the glove compartment of Mr. Stewart's car.  Mr. Stewart gave Mr. Kraemer permission to put the keys in the glove box, but he advised Mr. Kraemer that he carried a handgun in the glove compartment.  Mr. Stewart also informed Mr. Kraemer that he had a valid permit to carry a weapon.  At all relevant times, Mr.

_____
* Retired Senior Judge assigned to the Superior Court.

Stewart maintained a Pennsylvania License to Carry Firearms issued by the Sheriff of Beaver County.

A few days later, on April 10, 2013, Mr. Stewart was summoned to a meeting at the Pittsburgh airport. At the meeting, Tom Herity, Manager of FedEx Zone Security in Chicago, informed Mr. Stewart that he was being investigated because of allegations concerning a handgun in the glove compartment of his car. A week later, on April 17, 2013, Mr. Stewart was terminated for violation of FedEx Policy 8.10, which, in relevant part, prohibits employees from possessing firearms or weapons on company property.

Specifically, the FedEx policy provides:

No firearms or weapons are permitted on Company property, in Corporate aircraft, in Company vehicles, or in Corporate buildings unless authorized by Corporate Security. Where federal, state or local laws impose different or additional requirements, the Company will abide by governing law.

Mr. Stewart identified the policy in his Complaint. There is no dispute that he was terminated because of the firearm in his car on April 5, 2013. Following his termination, Mr. Stewart initiated this lawsuit against FedEx alleging wrongful discharge. Mr. Stewart claims that his termination violates public policy.

Trial Court Opinion, 6/24/2014, at 2-3 (citations omitted).

FedEx filed preliminary objections in the nature of a demurrer pursuant to Pa.R.C.P. 1028(a)(4), which the trial court sustained by order of June 24, 2014. Stewart timely filed a notice of appeal. The trial court did not order Stewart to file a statement of errors complained of on appeal, and none was filed.

Stewart presents one question for this Court's consideration: "whether the [trial] court wrongfully dismissed [Mr. Stewart's] case determining a

- 2 -

question of fact whether a licensed firearm in a personal vehicle's glove compartment is located on Mr. Stewart's or [FedEx's] property?" Stewart's Brief at 4.

We consider Stewart's question mindful of the following standard of review.

> When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*B.N. Excavating, Inc. v. PBC Hollow-A, L.P.*, 71 A.3d 274, 277-78 (Pa. Super. 2013) (*en banc*) (quoting *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 282–83 (Pa. Super. 2010)).

Stewart sets forth three arguments in support of his position that the trial court erred in dismissing his complaint on preliminary objections. First, he argues that the trial court erred in holding that FedEx could terminate him for "no reason" when FedEx never informed him that he was terminated for "no reason." Stewart's Brief at 8. Next, Stewart claims that the trial court erred in ruling that FedEx could terminate him based upon an ambiguous company policy. *Id.* at 8-9. Finally, Stewart maintains that

FedEx's termination of him violated an important Pennsylvania public policy, namely, the right to bear arms. *Id.* at 9-15.

This Court has summarized Pennsylvania's at-will employment doctrine as follows.[1]

> "In Pennsylvania, absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." *Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009). "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Id.* at 563.
>
> > An employee may bring a cause of action for a termination of that relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy. In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted. Rather, it is for the legislature to formulate the public policies of the Commonwealth. The right of a court to declare what is or is not in accord with public policy exists only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it. Only in the clearest of cases may a court make public policy the basis of its decision. To determine the public policy of the Commonwealth, we examine the precedent within Pennsylvania, looking to our own Constitution, court decisions, and statutes promulgated by our legislature.
>
> *Id.* at 563 (quotation and citations omitted).
>
> Applying this standard, Pennsylvania courts have found actionable exceptions where the employee was terminated for filing a claim for worker's compensation benefits, *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998); for filing a claim for unemployment benefits, *Highhouse v. Avery Transportation*,

---

[1] Stewart does not claim that he was employed by FedEx pursuant to a contract.

660 A.2d 1374 (Pa. Super. 1995); for failing to submit to a polygraph test where a statute prohibited employers from so requiring, **Kroen v. Bedway Security Agency, Inc.**, 633 A.2d 628 (Pa. Super. 1993); for complying with a statutory duty to report violations to the Nuclear Regulatory Commission, **Field v. Philadelphia Electric Co.**, 565 A.2d 1170 (Pa. Super. 1989); and for serving jury duty, **Reuther v. Fowler & Williams, Inc.**, 386 A.2d 119 (Pa. Super. 1978).

Courts have found no public policy exception where the employee was terminated as a result of sexual discrimination by an employer not covered by the Pennsylvania Human Relations Act, **Weaver, supra**; for complaining about violations of the Occupational Safety and Health Act, **McLaughlin v. Gastrointestinal Specialists, Inc.**, 750 A.2d 283 (Pa. 2000); for expressing concerns that the employer's product was unsafe, **Geary v. U.S. Steel Corporation**, 319 A.2d 174 (Pa. 1974); for disengaging an illegal surveillance system, **Hineline v. Stroudsburg Electric Supply Co.**, 559 A.2d 566 (Pa. Super. 1989), *appeal denied* 574 A.2d 70 (Pa. 1989); or for complaining about the waste of taxpayer money, **Rossi v. Pennsylvania State University**, 489 A.2d 828 (Pa. Super. 1985).

In sum, "an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when [specifically] prohibited from doing so by statute." **Donahue v. Federal Exp. Corp.**, 753 A.2d 238, 244 (Pa. Super. 2000) (quoting **Spierling v. First Am. Home Health Servs., Inc.**, 737 A.2d 1250, 1252 (Pa. Super. 1999)). Outside of those categories of our legislature's expression of public policy, a court may find a public policy exception that will sustain a wrongful termination action only if the public policy "is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." **Weaver**, 975 A.2d at 563.

**Mikhail v. Pennsylvania Organization for Women in Early Recovery**,

63 A.3d 313, 316-17 (Pa. Super. 2013).

From the above it is immediately clear that Stewart's first two

arguments warrant no relief. He has no cause of action against FedEx for

wrongful termination unless the termination violates public policy. Therefore, it matters not whether FedEx articulated no reason or a bad reason for terminating Stewart's employment, whether its firearm policy is vague, or whether Stewart's gun was on his property or FedEx's property when it was in his glovebox. The only relevant question is whether Stewart has pled that he was terminated for a reason that violates a policy of this Commonwealth that "is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." **Weaver**, 975 A.2d at 563.

In his complaint, Stewart claimed that his termination was in violation of Pennsylvania's public policy to guard the rights "of citizens of Pennsylvania to protect themselves." Complaint, 8/7/2013, at 5. He averred that this policy was manifest in Article I, Section 21 of the Pennsylvania Constitution, and in 18 Pa.C.S. § 6106. Stewart also referenced in his complaint the decision of the Kentucky Supreme Court in **Mitchell v. University of Kentucky**, 366 S.W.3d 895 (Ky. 2012). For the following reasons, we hold that Stewart has failed to identify any Pennsylvania public policy which has been violated by his termination.

Article I, Section 21 of the Pennsylvania Constitution provides that the "right of the citizens to bear arms in defence of themselves and the State shall not be questioned." Pennsylvania Constitution, Art. I, § 21. The statute Stewart invokes is a provision of the Crimes Code entitled "firearms

not to be carried without a license." 18 Pa.C.S. § 6106. Therein our legislature declared, *inter alia*, that it is a crime to carry a firearm in a vehicle without a valid license.

This Court has noted that "neither the Second Amendment to the United States Constitution, nor the Pennsylvania Constitution, bestows on any person the right to carry a concealed firearm or transport a loaded firearm in a vehicle." **Commonwealth v. McKown**, 79 A.3d 678, 690 (Pa. Super. 2013). Similarly, it is evident from the language of 18 Pa.C.S. § 6106 that that statute criminalizing the conduct of carrying a firearm in a vehicle without a license does not conversely create a right to carry a licensed firearm in a car.

In **Mitchell**, the plaintiff was fired for having a licensed firearm in his car on the property of his employer, the University of Kentucky. The Supreme Court of Kentucky held that Mitchell "established that his discharge was contrary to a fundamental and well-defined public policy, *i.e.*, the right to bear arms, as evidenced by existing statutory provisions," in particular K.R.S. 237.106, which provides:

> (1) No person, including but not limited to an employer, who is the owner, lessee, or occupant of real property shall prohibit any person who is legally entitled to possess a firearm from possessing a firearm, part of a firearm, ammunition, or ammunition component in a vehicle on the property.
>
> * * *
>
> (4) An employer that fires, disciplines, demotes, or otherwise punishes an employee who is lawfully exercising a right

guaranteed by this section and who is engaging in conduct in compliance with this statute shall be liable in civil damages. An employee may seek and the court shall grant an injunction against an employer who is violating the provisions of this section when it is found that the employee is in compliance with the provisions of this section.

*Mitchell*, 366 S.W.3d at 902 (quoting K.R.S. 237.106).

Stewart points to no Pennsylvania statute comparable to the Kentucky statute at issue in *Mitchell*. Indeed, as the trial court noted, such legislation had been proposed, but **not** enacted, in Pennsylvania at the time of Stewart's termination. Trial Court Opinion, 6/24/2014, at 22-25 (discussing Senate Bill 1438 (2011) and House Bill 2243 (2014)). Therefore, the reasoning of *Mitchell* is inapplicable because, unlike Kentucky's legislature, our legislature has not declared that Pennsylvania public policy is violated by FedEx's termination of Stewart.

Thus, the facts alleged in Stewart's complaint do not establish that FedEx (1) required him to commit a crime, (2) prevented him from complying with a statutorily imposed duty, (3) discharged him in violation of a statute, or (4) otherwise terminated him in violation of a public policy that "is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Weaver*, 975 A.2d at 563. Accordingly, Pennsylvania law does not permit recovery on the facts averred, and the trial court properly dismissed Stewart's complaint.

Order affirmed.

Judge Bowes joins the opinion.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015